UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BRYAN W.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Civil Action No. 24-06717 (KMW)

**OPINION**

**WILLIAMS, District Judge:**

This matter comes before the Court by way of *pro se* Plaintiff Bryan W.'s[1]  Appeal (ECF No. 1) from the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Social Security Disability Insurance Benefits ("DIB").  For the reasons set forth below, the Commissioner's decision is **AFFIRMED.**

I.       **PROCEDURAL HISTORY**

The Court recites herein only those facts necessary for its determination on this appeal. Plaintiff filed an application seeking DIB and supplemental social security income on February 17, 2022, alleging an onset date of disability beginning March 20, 2021. (R. 198-211).  In his application, Plaintiff alleges disability due to low blood count, iron deficiency, four hernia surgeries with leaking blood, stents in legs, needing a right hip replacement, floating left knee,

---

[1] Due to the significant privacy concerns in Social Security cases, any non-governmental party will be identified and referenced solely by first name and last initial in opinions issued in the United States District Court for the District of New Jersey. *See* D.N.J. Standing Order 2021-10.

difficulty walking and climbing steps, and gout. (R. 225). Plaintiff's claims were denied initially on August 9, 2022, and upon reconsideration on November 14, 2022. (R. 79-85, 95-100).

On November 18, 2022, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (R. 133-134). A hearing was held by video conference on July 26, 2023. (R. 58-77). Plaintiff, who was represented by counsel,[2] testified, as did a Vocational Expert ("VE"). (*Id.*). The ALJ issued a Decision Denial on November 1, 2023. (R. 30-46). Plaintiff appealed the decision to the Appeals Council, which affirmed on April 5, 2024. (R. 1-4).

On June 4, 2024, Plaintiff timely appealed the matter to this Court seeking review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner filed the Administrative Record on August 5, 2024. (ECF No. 6). Plaintiff filed a brief stating the basis for his appeal on July 28, 2025. (ECF No. 12, Pl.'s Br.). Therein, Plaintiff argues generally for reconsideration, noting his various medical impairments, but makes no specific arguments regarding a failure by the ALJ to adhere to the appropriate standards. (*Id.*). The Commissioner filed a responsive brief on August 22, 2025. (ECF No. 14, Opp. Br.). Plaintiff did not file a reply brief.

## II.    LEGAL STANDARD

When reviewing a final decision of an ALJ as to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)

---

[2] Plaintiff was represented at the hearing and in the early stages of the process by Stephen Ross Jr but has terminated that representation as of January 18, 2024. (AR 16-17).

(quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (citation omitted). The Court's review of legal issues is plenary, meaning the Court reviews those issues independently and without deference to the ALJ's determinations. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further states:

> An individual shall be determined to be under a disability only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). Before the ALJ, "[t]he burden of proof is on the claimant at all steps except step five, where the burden is on the

3

Commissioner of Social Security." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019)

(citation omitted). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i), If she is, she is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements, *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, she is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(H). If she has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[,]" *Smith*, 631 F.3d at 634. If the claimant's impairments do, she is disabled, 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether she can perform her "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [she] can still do despite [her] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform her past relevant work despite her limitations, she is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If she cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot, she is disabled.

*Id.* at 201–02.

4

The plaintiff bears the burden on appeal of showing not merely that the ALJ erred, but that the error was harmful. As the Supreme Court has said regarding judicial review of a governmental agency decision, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see also Rutherford*, 399 F.3d at 553. (finding that "a remand is not required here because it would not affect the outcome of the case"). That is, the plaintiff must explain how the "error to which [s]he points could have made any difference." *Shinseki*, 556 U.S. at 413.

## III.   FACTUAL BACKGROUND

Plaintiff Bryan W. was born on August 31, 1980, making him 40 years old at the alleged onset date and 43 at the time of the ALJ's decision. (R. 40). Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2026, meaning that he must establish disability on or before that date to be entitled to benefits. (R. 34).

### A. Plaintiff's Personal, Educational, Work, and Medical History

Plaintiff has a high school education and at least some college education. (R. 226). At the time of the administrative hearing, Plaintiff resided in Bridgeton, New Jersey, with his mother. (R. 246). Plaintiff has past relevant work as a building maintenance worker, grounds keeper, carpenter's helper, and a glazer, and he last worked in March of 2021. (R. 39-40, 226). Plaintiff reported that he stopped working due to his health conditions. (R. 226).

The record reflects that Plaintiff has varicose veins and venous disease. (R. 1254-1256, 1385-1392). In January of 2022, Plaintiff underwent an endovenous radiofrequency ablation procedure at the right calf greater saphenous vein and multiple incompetent varicosities. (R. 1254-1259). Following the procedure there was significant improvement in Plaintiff's bilateral lower

extremity edema and showed positive clinical response to endovenous interventions. (R. 1249-1253).

Plaintiff is consistently noted to have obesity, with body mass index measurements placing him in the obese range during the relevant period. (R. 945, 1606, 1627). Imaging and examination findings document degenerative joint disease affecting Plaintiff's hips and knees. (R. 477, 483, 582, 596, 640, 793, 802, 1586). During a March 15, 2021 visit with a pain management specialist Plaintiff noted that his medication regimen effectively manages his pain. (R. 1127). In November of 2022 Plaintiff saw Dr. Henry Joseph Dolch, D.O., regarding pain in his right hip and groin. (R. 1620-1632). The Doctor noted that Plaintiff would eventually need a total hip arthroplasty. (R. 1628). At a visit with orthopedic surgeon, Dr. Matthew Brown on December 30, 2022, it was noted Plaintiff walked with an antalgic gait and further that Plaintiff would require a minimum of six months with a stable wound and no drainage (following complications from hernia procedures, discussed below) prior to consideration of a total hip arthroplasty. (R. 1607-1608). The record also reflects treatment for gout during the relevant period. (R. 498, 503, 509, 1564-1565, 1641, 1646, 1659).

In July of 2021 Plaintiff underwent Hernia repair surgery which included the placement of a wound VAC. (R. 722). Subsequent imaging in August 2021 described a chronic-appearing wound at the repair site with phlegmonous changes and concern for a possible colocutaneous fistula. (R. 595–596). In September 2021, Plaintiff was treated for a deep incisional surgical site infection and sepsis related to the surgical wound. (R. 598-646). Treatment records throughout 2022 document ongoing wound management, including negative pressure wound therapy ("VAC") and prescribed dressing changes. (R. 1448, 1535, 1545). As late as January 2023, medical notes

6

described a "non-healing abdominal wound x 1.5 yrs," reflecting continued wound complications. (R. 1641–1647).

## B. The ALJ's Decision

On November 1, 2023, the ALJ issued a decision concluding that Plaintiff was not disabled from March 21, 2021, through the date of the decision. (R. 33-41). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 20, 2021. (R. 35).

At step two, the ALJ determined that Plaintiff had the following severe impairments: varicose veins, obesity, degenerative joint disease of the hips and knees, status post hernia surgery, and gout. (*Id.*).

At step three, the ALJ found that none of Plaintiff's impairments, individually or in combination, met or medically equaled the level of severity of any listing. (R. 36). Specific consideration was given to listings 4.11 Chronic venous insufficiency, 4.12 peripheral arterial disease, 1.17 reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, and 1.18 abnormality of a major joint(s) in any extremity. (*Id.*). Further, the ALJ also considered Plaintiff's obesity in accordance with SSR 19-2p. (*Id.*). The ALJ found that "no treating, examining, or non-examining medical source has rendered an opinion that [Plaintiff's] impairments, singly or in combination, medically equal the criteria of any listed impairment." (*Id.*).

Before making the step four determination, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to the following limitations:

> can occasionally climb ramps, stairs and balance; never climb ladders, ropes or scaffolds, stoop, kneel or crouch; no constant operation of foot controls bilaterally; avoid concentrated exposure to extreme temperatures, wetness, and humidity;

7

avoid all exposure to hazards such as unprotected heights, moving mechanical parts and uneven terrain; and stand and walk with a handheld assistive device such as a single point cane.

(R. 36). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; but that Plaintiff's statements regarding intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 37). In that regard, the ALJ reviewed the medical evidence of record, noting where such evidence did not support Plaintiff's statements regarding intensity, persistence, or limiting effects of the symptoms. (R. 36-39). For example, the ALJ notes that at a follow-up visit after Plaintiff's endovenous radiofrequency ablation procedure on January 19, 2022 that Plaintiff was "doing well and had significant marked improvement in his bilateral lower extremity edema. (R. 38, 1249). The ALJ concluded at step four that Plaintiff was unable to perform any past relevant work. (R. 39).

At step five, relying on testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other work in the national economy. (R. 40). Specifically, the ALJ identified the representative occupations of lens inserter, customer service clerk, and order clerk – each of which exists in significant numbers in the national economy. (*Id.*). Therefore, the ALJ concluded that Plaintiff was not disabled under the Act during the relevant time period. (*Id.*).

## IV.    DISCUSSION

On appeal, Plaintiff, proceeding *pro se*, essentially asks this Court to reevaluate the evidence, making no clear argument of error on the part of the ALJ. (Pl.'s Br. ECF No. 12). Specifically, in his brief to this Court Plaintiff does little more than rehash his medical impairments without pointing to any legal deficiency in the ALJ's reasoning nor raising any evidence the ALJ

overlooked. (*Id.*). At most, Plaintiff's arguments can be read to be requesting a reconsideration, noting his belief that his impairments render him disabled and unable to work. (*Id.*). The Court is sympathetic to Plaintiff's ailments; however, such a reconsideration of the evidence is not permitted. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999) ("Our review of the Commissioner's final decision is limited to determining whether that decision is supported by substantial evidence.").

An ALJ is required to adhere to the five-step sequential analysis and to base all of its findings in "substantial evidence." *Knepp*, 204 F.3d at 83. Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552. Indeed, Courts are not permitted to set aside the Commissioner's decision when that decision is supported by substantial evidence – even if the Court "would have decided the factual inquiry differently." *Fargnoli*, 247 F.3d at 38.

Here, the ALJ appropriately followed the five-step sequential analysis, and all conclusions are supported by substantial evidence. That is all that is required. *Knepp*, 204 F.3d at 83. Given the Plaintiff's *pro se* status the Court must give a generous reading of all potential arguments, and in that regard, notes that Plaintiff's brief can best be described as a strong disagreement with the ALJ's RFC analysis. (Pl.'s Br., ECF No. 12). The Court also notes that Plaintiff appears to rely on a previous period of disability resulting from his motorcycle accident in 2007 to support his reasoning for why he should be determined disabled now. (*Id.*, *see also*, ECF No. 1 at 4). Specifically, in his Complaint Plaintiff states that following his motorcycle accident he "had permanent disability until 2011[,]" at which time he went back to work progressively. (*Id.*) However, this prior determination of disability is not binding on the ALJ when "addressing a subsequent period of disability." *Russell v. Kijakazi*, 2023 WL 2278651, at *5 (E.D. Pa. 2023)

9

("Earlier findings and decisions of an ALJ are not binding in later proceedings which involve a determination of whether a claimant is disabled for a subsequent period.") (quoting *Zavilla v. Astrue*, 2009 WL 3364853, at \*13 (W.D. Pa. 2009)).   Such considerations are especially unwarranted when, as is the case here, there is a significant gap in time between the two disability claims. *Carter v. Barnhart*, 2005 WL 1249218, at \*\*2 (3d Cir. 2005) ("In light of the difference of four years between the alleged onset date of disability in [plaintiff's] second and third application, there was no reason to reopen the earlier application."). Here, Plaintiff's earlier disability period presumably began in 2007 following his motorcycle accident and ended in 2011 when he returned to work – more than ten years before the currently alleged disability onset date of March 20, 2021. (ECF No. 1 at 4).[3]  Further, a review of the medical evidence in this record does not disclose any medical evidence that relates Plaintiff's current impairments to his prior disability determination. Crucially, without such medical documentation, the Court can not conclude that the ALJ's lack of consideration or discussion of Plaintiff's prior disability constitutes an error warranting remand.

Regarding Plaintiff's general disagreement with the ALJ's RFC analysis, what is important is whether that analysis and corresponding conclusions were based in substantial evidence, which, as stated, they were.  Specifically, when determining Plaintiff's RFC, the ALJ acknowledged that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; but Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms was not supported by the evidence in the record. (R. 37).

Following that, the ALJ proceeded in an analysis of the medical evidence of record, noting where such evidence does not support Plaintiff's assertions regarding the intensity, persistence,

---

[3] Notably, the Court can only infer the onset date of Plaintiff's prior disability determination because other than Plaintiff's reference there is nothing in the record relating to Plaintiff's prior Social Security proceeding.

10

and limiting effects of those symptoms. (R. 36-39). For example, the ALJ notes that during a July 26, 2021 visit to Dr. Ilyas Ahmed, Plaintiff was "healthy appearing and ambulating normally with a normal gait[, and that h]e had normal strength, normal movement of all extremities, grossly intact sensation, normal reflexes and no extremity cyanosis or edema." (R. 37). Further, in a later medical appointment on May 23, 2022, for a vascular surgery follow-up visit, the ALJ notes that the Plaintiff "was doing well and had significant marked improvement in his bilateral lower extremity edema." (R. 38). Noting Plaintiff's hip issues, the ALJ acknowledged a December 30, 2022 visit to orthopedic surgeon Dr. Matthew Brown in which examination notes indicated "plaintiff walked with an antalgic gait." (*Id.*). Even more recently, the ALJ noted a subsequent visit to Dr. Ahmed on February 27, 2023, noting that Plaintiff had "normal strength, normal movement of all extremities and grossly intact sensation." (*Id.*).

The ALJ consistently acknowledged Plaintiff's history of multiple hernia repairs and related wound healing issues. (R. 37-39). Indeed, the ALJ specifically notes that impairment, in addition to Plaintiff's hip impairment and related antalgic gait, as the basis for the limitation to sedentary work, the lowest defined exertional category under applicable regulations. (R. 39, 20 C.F.R. § 404.1567). In doing so the ALJ explained that such a limitation was more appropriate than the light exertional work, a difference to Plaintiff's benefit, that the prior State agency medical consultants found. (R. 39). Specifically, State agency consultant Dr. Leonard Nicosia found Plaintiff to be able to perform light exertional work, a decision which was later affirmed on reconsideration by Dr. Esther Tomor. (*Id.*). The ALJ explained that those opinions were unpersuasive, noting the "severe degenerative joint disease and ongoing hernia repair wound complications" were more consistent with a limitation of sedentary work. (*Id.*). It is clear to the Court, that the ALJ's analysis and evidence relied upon clearly meets the low "more than a

11

scintilla" bar it must in order to constitute substantial evidence. *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154-55 (2019). Accordingly, the ALJ's findings will not be disturbed.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Acting Commissioner. An appropriate Order will follow.

**KAREN M. WILLIAMS**
**United States District Judge**

12